IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOREEN J. FEDEROFF,

       Plaintiff,                      No. CIV S-05-0151 GGH

      vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,
                                ORDER

       Defendant.
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is GRANTED IN PART, the Commissioner's Motion for Summary Judgment is DENIED, and the Clerk is directed to enter judgment for the plaintiff.

BACKGROUND

      Plaintiff, born February 6, 1965, applied for disability benefits on September 23, 2002. (Tr. at 56-59.) Plaintiff alleged she was unable to work since May 31, 2002, due to manic depression and stress, with physical symptoms. (Tr. at 63.)

\\\\\

In a decision dated October 28, 2004, ALJ Barry M. Wesker determined that plaintiff was not disabled.[1] The ALJ made the following findings:

    1.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    2.    The claimant's Type II Bipolar disorder is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 416.920).

    3.    This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    4.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

    5.    The claimant has the following residual functional capacity: the claimant retains the residual functional capacity to

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
| | | perform work at all exertional levels with mental limitations that reduce her ability to respond appropriately to supervisors, coworkers and usual work situations by 25% of the norm and that reduce her ability to deal with changes in routine work settings by 25% of the norm.  The claimant has no significant limitations in understanding, remembering and carrying out simple or detailed instructions. |
| | 6. | The claimant's past relevant work as an assembler and as an industrial truck driver did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965). |
| | 7. | The specific severity of claimant's medically determinable Type II Bipolar Disorder does not prevent the claimant from performing her past relevant work. |
| | 8. | The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)). |

(Tr. at 23-24.)

ISSUES PRESENTED

Plaintiff has raised the following issues:  A. Whether the ALJ Failed to Consider All of Plaintiff's Impairments Under Step Two; B. Whether the ALJ Failed to Provide Specific or Legitimate Reasons for Rejecting the Opinion of Treating Mental Health Care Provider Sutter-Yuba Mental Health Service; C.  Whether the ALJ Failed to Credit the Testimony of Lay Witness Mr. Black Without Providing Clear and Convincing Reasons; and D.  Whether the ALJ Failed to Include All of Plaintiff's Limitations in the Hypothetical to the Vocational Expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

3

1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

   A. <u>The ALJ Erred in Failing to Find Plaintiff's Emotional Impairments to be Severe Impairments</u>

Plaintiff first contends that in considering plaintiff's impairments at step two, the ALJ did not find plaintiff's type I bipolar disorder,[2] borderline personality disorder, histrionic personality disorder and panic disorder to be severe impairments.[3]

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28.  The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  At this step, the ALJ may decline to find a severe impairment "*only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability

---

[2] Plaintiff's Bipolar II disorder was found to be severe.  It features "the occurrence of one or more Major Depressive Episodes ... accompanied by at least one Hypomanic Episode .... Diagnostic and Statistical Manual of Mental Disorders 359 (4th ed.1994) ("DSM IV").  Bipolar I disorder, in contrast, is characterized by "one or more Manic Episodes ... or Mixed Episodes ... Id. at 350-51.

[3] Plaintiff also lists type II bipolar disorder as excluded from the ALJ's consideration as a severe impairment; however, the ALJ did find this disorder to be severe. (Tr. at 15.)

1  to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

2  The ALJ only found plaintiff's type II bipolar disorder to be severe because "it
3  significantly limits the claimant's abilities to respond appropriately to supervision, coworkers,
4  and usual work situations, and to deal with changes in routine works settings." (Tr. at 15.) The
5  ALJ did not even mention the other disorders presented by plaintiff.

6  The record reflects that plaintiff had, at times, been diagnosed with these other
7  impairments thought to have more than a minimal effect on plaintiff's capabilities. For example,
8  on April 15, 2002, plaintiff was diagnosed with Bipolar Disorder Type I, having had a recent
9  episode, and panic disorder without agoraphobia. (Tr. at 165.) These disorders were thought to
10  cause a significant impairment in activities of daily living, work and finances, and access to
11  health care. (Id. at 166.) There was a probability of deterioration in living arrangement, social
12  relationships, and school situation. (Id.) Plaintiff's GAF at this time was 46-51.[4]

13  On September 28, 2001, plaintiff was diagnosed with anxiety disorder. (Tr. at
14  141.) On October 23, 2003, plaintiff was diagnosed with bipolar disorder, and borderline
15  personality disorder, with histrionic and antisocial traits.[5] (Tr. at 228.) GAF score was 45. (Id.)
16  At that time, plaintiff reported that she was hearing voices. (Id. at 227.) Dr. Walter reviewed
17  plaintiff's records and testified at the hearing. He opined that the record supports a moderately
18  severe condition but not a severe condition. (Id. at 278.) He also suggested that plaintiff's GAF
19  was appropriately a score of 60 rather than the lower scores assigned by treating sources. (Id.)
20  \\\\\

---

[4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, a GAF of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

[5] Plaintiff describes this diagnosis as borderline personality disorder and histrionic disorder with antisocial traits. The record is not clear, however. (Tr. at 228.)

Dr. Owens gave plaintiff a psychological evaluation on January 9, 2004, at the request of the Department of Social Services.  He noted hallucinations but no delusions or bizarre thinking; however, her reports of hallucinations were advised to be accepted with caution because these symptoms were not reported in any other records.  (Tr. at 219, 221.)  He also thought she had no deficits in intellectual functioning or abstract thinking.  (Id. at 219, 221.)  His diagnosis was bipolar II, alcohol dependency with physiological dependency in early full remission, and a GAF of 60.[6]  (Id. at 222.)  Test results indicated depression which might manifest itself in these behaviors: "socially withdrawn, feelings of hopelessness, feelings of inadequacy, episodes of panic, extremely suggestible, and immature outbursts of anger."  (Id. at 221.)  Plaintiff related to this psychologist that although she was interested in working, she avoids jobs due to a fear of competing with others and intense anxiety over feeling inadequate.  (Id.) (at one point, plaintiff had stated to a clinician at Sutter-Yuba Mental Health Service that she was afraid to start any work because "I am trying to be on disability." (Tr. 154)).  Dr. Owens thought that plaintiff was moderately impaired in interacting in the world and maintaining social functioning, as well as in daily activities, independent living skills and judgment.  He did think that if she were given funds, she would spend it on alcohol due to her history of extensive alcoholism and that she has been in recovery only a short time.  (Id. at 218.)  He suggested that she might be overstating her symptoms.  (Id. at 220.)  In regard to the work world, this psychologist found plaintiff to be moderately impaired in the following areas: ability to respond appropriately to coworkers, supervisors and the public, to respond to usual work situations (attendance and safety), and to deal with changes in a routine work setting.  (Id. at 222.)  Plaintiff was unimpaired in ability to understand, remember and carry out simple and complex instructions, and maintain attention and concentration.  (Id.)

---

[6] According to the DSM IV, a GAF of 60 indicates moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

6

Plaintiff's counsel analysis, that if plaintiff was ever diagnosed with a mental problem, that diagnosis was *per force* correct and forever more remained with plaintiff, is a bit simplistic. As everyone who has dealt with mental illnesses in a forensic setting knows, mental health personnel may often have different, even inconsistent diagnoses, for the symptoms exhibited by the patient. Plaintiff's idea that diagnoses are simply additive, permanent, and never changing does not take this into account. Even plaintiff's treating personnel did not consistently diagnose plaintiff with all of the afflictions plaintiff has added together. Plaintiff's analysis does not take into account that at the time some of them were made, plaintiff was an active alcoholic. Moreover, the AXIS II disorders attributed to plaintiff may well be interconnected with the Axis I diagnosis such that the attributes of the Axis II are not in reality completely separate mental problems.

Nevertheless, plaintiff is correct that the ALJ's simple acceptance of one bipolar II diagnosis is unexplained. There is no discussion of the other diagnoses, and why the ALJ rejected them, or thought them subsumed, either in whole or in part, within the Axis I diagnosis he accepted. There is no analysis concerning why the treating personnel opinions were rejected. Clearly, such a discussion has to take place. Lester v. Chater, 81 F.3d 821 (9th Cir. 1995). Therefore, the case will be remanded for further consideration at this step.

B. Testimony of Plaintiff's Lay Witness

Plaintiff also takes issue with the ALJ's treatment of lay testimony by plaintiff's landlord and friend, Mr. Black. An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the

testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Ninth Circuit has just proclaimed that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination. Stout v. Commissioner, ___ F.3d ___, 2006 WL 2052306 (9th Cir. July 25, 2006).

In this case, the ALJ did not refer to Mr. Black's testimony, but only mentioned that he had considered "the opinions of other sources in the record." (Tr. at 22.)  Mr. Black testified at the hearing that he had known plaintiff for three years and that she lived on his property in a mobile home. (Tr. at 281.)  He met her when he was a certified alcohol abuse counselor and she was his client. He later heard from her that she was living on the street and permitted her to stay. (Id. at 282.)  He and his wife help plaintiff by letting her live there even though she owes them rent, giving her things to do, and share their dinner with her occasionally. They drive her to appointments and shopping. (Id.)  He testified that plaintiff has no friends, and does not socialize. He does not think she could work because she could not be depended on to show up. (Id. at 283.)  She has mood swings, depression, and the shakes. (Id.)  He added that plaintiff was a good kid, and tries hard to help herself. As an example, he pointed out that she attends classes at college which does not require homework. He thought that if homework were required, she would not be able to complete it on her own. (Id. at 283-84.)

These observations were required to be discussed. The court cannot say, given the record, that no reasonable ALJ would not have found them significant in the analysis.

\\\\\
\\\\\
\\\\\
\\\\\

8

CONCLUSION[7]

If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp. 1273, 1277-78 (C.D.Cal. 1996). The court concludes, as did Barbato, that this case should be remanded for further administrative proceedings to enable the ALJ to obtain a more complete record, and to avoid the possibility of an inequitable result. Nothing the court has stated herein should be taken as an opinion that plaintiff is, in fact, unable to work at any level.

In sum, the court finds the ALJ's assessment is not fully supported by substantial evidence in the record or based on the proper legal standards. Accordingly, plaintiff's Motion for Remand or Summary Judgment is GRANTED IN PART, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter Judgment for the plaintiff. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 8/16/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Federoff151.ss.wpd

---

[7] Based on the reason for remand, the court will not address plaintiff's other contentions of error.